PETER TOMASELLO AND OTHERS, MEMBERS OF THE BOARD OF COUNTY COMMISSIONERS FOR SANTA ROSA COUNTY, *Plaintiffs in Error,* v. THE BOARD OF PUBLIC INSTRUCTIONS FOR SANTA ROSA COUNTY *Defendant in Error.*

The existing statutes do not authorize the county commissioners to revise the decision of the county board of public instruction as to the millage required for the maintenance of the necessary county schools of the county, when the millage is within the constitutional limits and the estimates include no illegal items.

This case was decided by Division A.

Writ of Error to the Circuit Court for Santa Rosa County.

The facts in the case are stated in the opinion of the court.

*T. F. West,* for plaintiffs in error;.

*Maxwell & Reeves,* for defendant in error.

COCKRELL, J.,—The board of public instruction for Santa Rosa county were awarded by the circuit court a peremptory writ of mandamus against the county commissioners of that ·county ordering them to levy a tax of seven mills for county school purposes.

The sole question presented on this record is upon which body has the legislature cast the duty of determining the tax millage for county school purposes, or perhaps it may be more accurately stated does the legislation subject the decision of the board of public instruction to the discretion of the county commissioners? There is no suggestion that in the itemized statement of the school board upon which was based its decision that seven mills was needed, there was included any item that was illegal or not a school purpose, but the defense was placed upon the judgment of the county commissioners that some of the estimates were too high and might with safety be scaled down.

We feel satisfied that the county commissioners were acting under a high sense of a public obligation to see that no needless expense be incurred against the county and under an honest belief that the law cast upon them a duty which should not be shirked. The legislature, however, has spoken and we are to ascertain whether the duty or the power in the premises has been placed upon or accorded to them.

To solve the question presented we must construe three separate provisions of the statute law in the light of the legislative and judicial history.

VOL. 55, JANUARY TERM, 1908.     343

Tomasello, et al. v. The Board of Public Ins.—Opinion of Court.

The constitution itself makes liberal provisions for the public school system and further commands the legislature to provide for its liberal maintenance and the last amendment to that instrument adopted by the people of the state increased the maximum millage from five to seven mills.

The general care, custody and control of the county schools and the disbursement of school funds are placed with the county board of public instruction and from the seventeen specific directions to that board (section 347 General Statutes of 1906) we quote the fourteenth: "To prepare on or before the last Monday in June of each year, an itemized estimate showing the amount of money required for the maintenance of the necessary common schools of their county for the next ensuing scholastic year, stating the amount in mills on the dollar of taxable property of the county, which shall not be less than three or more than seven mills. and furnish a copy of the statement to the assessor of taxes of the county, and file a copy in the office of the board of public instruction; and the assessor shall assess the amount so stated, and the collector shall collect the amount assessed and pay over the same monthly to the county treasurer, who is also by law school treasurer, to be used for the sole benefit of the public schools."

The eleventh subdivision of the powers and duties of the county commissioners, General Statutes, Section 769, reads: "To apportion and order the levy of all county taxes in accordance with law, either for specific or general purposes, except when otherwise provided by law."

In the act relating to tax assessments and collection of revenue, Chapter 5596, Laws of 1907, the general power is conferred upon the county commissioners "to determine the amount to be raised for all county purposes" (Sec. 30), and in the Tax Levy Act of the same year, Chap. 5606, they are required to "ascertain and

determine the amount of money to be raised by tax for county purposes, including the current expenses, interest on bonded debt, bridges and county buildings and to meet the expenses they are hereby authorized to levy a tax of not more than five mills on the dollar on the real and personal property of the county * * * Provided that the county commissioners of each county shall levy a tax not to exceed seven mills nor less than three mills on the dollar, on the real and personal property of the county for county school purposes.* * *"

These acts are all *in pari materia* and are to be construed together and it is the duty of the court to reconcile them when possible into a consistent working whole. State v. Commissioners of Volusia County, 28 Fla. 793, 10 South. Rep. 14.

In the cited case this court had before it the Act of 1891, Chapter 4010, wherein specific power was given to the county commissioners to raise or lower within the constitutional limits the millage fixed by the school authorities. The point involved was a most puzzling one and it is most significant that the specific power conferred by that act, was omitted from the Act of 1893, upon the same subject and has never been granted in specific language since, though there have been various amendments of the law.

The earlier statutes as construed in the Gadsden County Case, Jones, Clerk, v. State *ex rel.* Board of Public Instruction, 17 Fla. 411, gave to the county commissioners the discretion only to determine whether the money is required by the school board for school purposes, and whether the sum required is within the limitation as to the rate. The opinion in that case is full and instructive both as to the propriety and competency of legislation conferring the power upon the school authorities rather than upon the county commissioners with their multitudinous duties, and we find no such differ-

ence between the legislation as it was then and as it stands now to warrant a different construction.

Then as now the county commissioners *ascertain and determine* the amount to be raised for "county purposes," while they levy the tax for "county school purposes" within the lawful limits. Under the former statutes the board of public instruction ascertained and determined the amount necessary for school purposes, which had to be authorized by the county commissioners; while under the present law the former makes up its itemized estimate showing the amount necessary for school purposes, stating the millage and furnish a copy to the tax assessor, and it is made the duty of the assessor to assess and the collector to collect the amount so stated and pay over the same monthly to the treasurer to be used for the sole benefit of the public schools.

The distinction between county purposes generally and county school purposes is, we think, clearly maintained, and the use of the phrase "all county purposes" used in the general revenue act of 1907 is explained and narrowed in meaning by the definition of "county purposes" given in the tax levy act by the same legislature.

The Gadsden county case referred to above sufficiently answers the argument that the power to *levy* the school tax within the constitutional limits is a power to raise or lower the millage fixed by the school board; this power was conferred that the county commissioners "might know and enter of record the entire amount of taxes to be collected; that they might know that the itemized statement of the school board contained no items for other than school purposes, and that the amount did not exceed the lawful limit."

The only legislation brought to our attention that may be said to affect seriously the construction of this court in the quoted case was is in the act of 1891, and that innovation was promptly repealed at the next ses-

sion of the legislature; it may almost be said that the construction so clearly placed has become a part of the subsequent legislation.

The judgment is affirmed.

SHACKLEFORD, C. J., and WHITFIELD, J., concur;

TAYLOR, HOCKER, and PARKHILL, JJ., concur in the opinion.