ELIZABETH R. LOGAN, as Administratrix of the Estate of John Logan, deceased, v. THE BOARD OF PUBLIC INSTRUCTION, Polk County, Representing Special Tax School District No. 1.

THE BOARD OF PUBLIC INSTRUCTION, Polk County, Representing Special Tax School District No. 1 of Polk County, v. ELIZABETH R. LOGAN, as Administratrix of the Estate of John Logan, deceased.

158 So. 720.
En Banc.
Opinion Filed January 19, 1935.

186

[redacted]

*E. C. Wimberly* and *Huffaker & Edwards,* for Plaintiff in Error, Logan.

*W. P. Allen* and *T. S. Trantham,* for Defendant in Error, Board.

STATEMENT.

WHITFIELD, C. J.—The following organic and statutory provisions are pertinent to the consideration of this cause:

Original Section 10, Article XII, of the Constitution authorized the Legislature to provide for the division of counties into convenient school districts, for the election biennially of three school trustees to hold office for two years and have the supervision of all the schools within the district; and for the levying of a district school tax not to exceed three mills on the dollar for the exclusive use of public free schools within the district upon a majority vote of the qualified electors of the district. An amendment adopted in 1922 increased the millage to not exceeding ten mills on the dollar. A proposed amendment to the section removing the tax limit was defeated at the polls in November, 1927.

Section 11, Article XII provides that:

"Any incorporated town or city may constitute a School District. The fund raised by Section Ten may be expended in the district where levied for building or repairing school houses for the purchase of school libraries and text-books, for salaries of teachers, or for other educational purposes, so

that the distribution among all the schools of the district be equitable."

Added Section 17, Article XII, adopted in 1912 was amended in 1924, authorized the Legislature with specific limitations, to provide for special tax school districts to issue bonds for the exclusive use of public free schools within any such special tax school district upon a majority vote of the qualified electors thereof who are freeholders.

The statutes of the State contain the following:

"Each county shall constitute a school unit; all subdivisions of a county for school purposes shall be designated as school districts; all school districts levying a school district tax shall hereafter be designated as special tax school districts, and all schools receiving any district tax, as special tax schools." Sec. 700 (560) C. G. L.

"Whenever a special tax school district is created and trustees are elected, they shall have the supervision of all the public schools within said district. The position of supervisor shall be superseded by that of trustees, and the duties prescribed by law for the supervisors shall be performed by the trustees. The powers of trustees shall not be those of control, but of supervision only, and shall extend to all the public schools within the special tax district, * * *." Sec. 709 (568) C. G. L.

"All public schools conducted within a special tax school district shall be under the direction and control of the county board of public instruction and county superintendent as in other districts, and subject to the same laws, rules and regulations prescribed for the conduct of other schools, except that the trustees shall have the power to nominate to the county board of public instruction teachers for all

schools within such special district. * * *." Sec. 710 (569) C. G. L.

"The board of trustees shall have the further right to say what proportion of the school funds raised within the district shall be applied in any year to buildings, repairs on buildings, to school libraries, to salaries of teachers and to other educational purposes: Provided, that they shall make a fair and equitable distribution of the funds among all the schools in the special tax school district which shall be shown in their itemized estimate." Sec. 711 (570) C. G. L.

"It shall be the duty of these trustees, on or before the first day of July in each year, to prepare an itemized estimate, showing the amount of money necessary and likely to be raised for the supplement of the county school funds appropriated to the district for the next ensuing scholastic year, and to certify therein the rate of millage voted to be assessed and collected upon the taxable property within the special tax school district for that year. * * *." Sec. 712 (571) C. G. L.

"It shall be the duty of the county tax assessors to furnish to the boards of public instruction of their respective counties on or before the first day of October of each year the total amount of special district school tax assessed in each and every special tax school district." Sec. 714 (573) C. G. L.

"It shall be the duty of the county board of public instruction to add the amount set apart for the salaries of teachers in each school within the special tax school district to the county appropriation made for that school, and upon this determine the salaries to be paid teachers and the length of the term that the school shall continue, and contract with teachers for the full term that said fund, arising from both county appropriation and the special tax fund, will sustain

the school. The part of this fund arising from the special tax shall be paid to the teachers upon the order of the county board, based upon reports approved by the trustees, the same as other school funds are paid upon the endorsement of school supervisors." Sec. 715 (574) C. G. L.

"The special tax fund set apart by the board of trustees for the payment of teachers shall not be subject to requisition for any other purpose by said trustees; the fund estimated for other educational purposes shall be paid out by warrants of the board of public instruction of the county upon the county treasurer, and said warrants to be based upon requisitions made by the board of trustees, accompanied by itemized bills for things purchased or work performed. All special funds collected within school district shall be disbursed solely for school purposes within the district in which the tax is collected, and as near as practicable, in the year in which the tax is collected, upon the recommendation of the board of trustees: Provided, that the trustees shall make no contract with any of its members embracing any monetary consideration." Sec. 716 (575) C. G. L.

"The trustees of any school district shall be a corporation and may hold property, sue and be sued, and perform other corporate functions, and perform the usual duties necessary to provide buildings, repair the same, and to purchase libraries and other school appliances: Provided, that no debt shall be created without the approval of the county board of public instruction." Sec. 717 (576) C. G. L.

"When there is no money in the county school fund applicable to the payment of outstanding school warrants issued by any county board of public instruction in this State, the county boards of public instruction of the several counties in this State are hereby authorized and empowered to

borrow money at a rate of interest not to exceed eight per cent. per annum, for the purpose of paying all such outstanding warrants, and for the further purpose of paying any and all legitimate expenses incurred in operating the schools of said county: Provided, however, that it shall be unlawful for any county school board to borrow any sum of money in any one year in excess of eighty per cent. of the amount as estimated by them to be required for the maintenance of the necessary common schools of their county for the next ensuing scholastic year in the manner prescribed by Section 561, Sub-section 13, which said sum so borrowed shall be paid in full before the board shall be authorized to borrow on the estimate for any succeeding year: Provided, further, that nothing in this law shall be construed to invalidate any outstanding debt of any county as now existing and now due, or to become due, or as requiring any board of public instruction to pay the same in full before being permitted to borrow eighty per cent. On the estimate for the next ensuing year, or to prohibit any board from funding or refunding at its maturity any debt created and existing on or before July 1st, A. D. 1915, and being thereby prohibited from borrowing eighty per cent. of its income for the ensuing year, as provided above: and Provided, further, that no school board shall after July 1, 1915, incur debts of any nature in excess of the estimated amount, except as herein provided." Sec. 566 (455) C. G. L.

Each Board of Public Instruction is directed:

"First.—To obtain possession of, accept and hold, under proper title, as a corporation, all property possessed, acquired or held by the county for educational purposes, and to manage and dispose of the same for the best interest of education: Provided, that nothing in this law shall be so

construed as to prevent any special tax school district from holding school property that it has, or may hereafter acquire, for school purposes, or prevent such districts from receiving their portions of money set apart for school purposes.

"Second.—To locate and maintain schools in every locality in the county where they may be needed, to accommodate, as far as practicable, all the youth between the ages of six and twenty-one years, during not less than four months in each year.

"Fifth.—To do whatever is necessary with regard to purchasing or renting school sites and premises, constructing, repairing, furnishing, warming, ventilating, keeping in order or improving the school houses, out buildings, fences, land and movable property, procuring proper apparatus for the schools, grading and classifying the pupils, and providing separate schools for the different classes in such a manner as will secure the largest attendance of pupils, promote the harmony and advancement of the school, and establishing, when required by the patrons, schools of higher grades of instruction where the advancement and number of the pupils require them."   Sec. 561 (454) C. G. L.

"All outstanding, unpaid county school warrants, notes, and other evidences of debt made, issued and delivered by the board of public instruction in any county in the State of Florida, and duly signed by its chairman, attested by its secretary, for and in consideration of service performed as teacher, for labor performed and material furnished in the construction of school buildings or additions thereto, furniture, equipment or supplies for the same, or for money loaned to and received by such board of public instruction for educational purposes and for interest on such loans, prior to May 21, 1921, are, hereby in all respects, validated

and declared to be legal and binding obligations: Provided, however, that the section shall not apply to any warrants, notes or evidence of indebtedness of any board of public instruction where the consideration or purchase price agreed to be furnished or paid said board therefor, or the money agreed to be loaned to said board thereon, has not been fully furnished to and received by the board issuing the same." Sec. 577 C. G. L.

WHITFIELD, C. J.—As stated by the trial court in its final judgment, this is an action on common counts and on counts for money borrowed and allegedly expended for public school purposes in Special Tax School District No. 1 of Polk County, Florida. The latter counts are construed to be "amplified common counts," and the action is regarded as brought to recover for money had and received. The amended declaration contained "amplified common counts numbered 7 to 12 and common counts numbered 13 to 16.

Counts 7 to 12 inclusive state six specific claims of the same general nature, with endorsements of interest payments, Count 7 being as follows:

"*Count Seven:* That on or about July 28th, 1923, at the request of the defendant, the said John Logan lent to the defendant for the exclusive use of the public free schools within the said Special Tax School District No. 1 the sum of $15,000.00, to be repaid upon demand with interest at the rate of eight per cent. (8%) per annum; and that thereupon, and in order to evidence the said indebtedness, the defendant, upon said date, executed and delivered to the said John Logan its demand school warrant No. 2169 for the repayment to him of said sum of money with interest as aforesaid; that, from time to time, the defendant has renewed the said school warrant, and that finally, on June 15th, 1925, the defendant executed and delivered to the said

John Logan its last renewal school warrant, No. 2077, in words and figures following, to-wit:

"STATE OF FLORIDA

"No. 2077                                                          $15,000.00

"POLK COUNTY BOARD OF PUBLIC INSTRUCTION

SCHOOL WARRANT        To bear interest at the rate of 8%
    SEAL OF           per annum from date of presentation
BOARD OF PUBLIC       to date of notification as provided in
  INSTRUCTION         Chapter 5182, Laws of Florida.

"PAY TO THE ORDER OF JOHN LOGAN FIFTEEN THOUSAND DOLLARS from any money belonging to the Lakeland Special Tax Fund for District No. 1 for Loan Given at BARTOW, FLA., this............day of June 15, 1925,........ 19........

"Countersigned

A. B. CONNOR                    J. A. GARRARD,
Secy. and County                Chairman of
Supt. of Schools               School Board.

ENDORSEMENTS ON BACK

"JOHN LOGAN
    6- 6-27        Interest Paid to   6-15-27        $2400.00
"MRS. E. R. L.
    6-12-28        Interest Paid to   6-15-28        $12.00.00
    6-17-29        Interest Paid to   6-15-29         1200.00
    12-19-29       Interest Paid to  12-15-29          600.00
    8-12-30        Interest Paid to   2-15-30          200.00

"That the money so lent by the said John Logan to the defendant was borrowed of the said John Logan by the defendant for the exclusive use of the free public schools in

said district, and that the money so lent was so used; that, in further recognition of the said obligation, the defendant has paid interest on said loan regularly from July 28th, 1923, to February 15th, 1930, out of applicable funds belonging to said Special Tax School District No. 1, but that since said February 15th, 1930, the defendant has failed and refused to pay any further interest on said debt or any of the principal, although frequent demand has been made on the defendant for payment of the said warrant and the interest that has accrued thereon, and that at the time of the said demands the defendant had in its possession and control applicable funds belonging to said Special Tax School District No. 1 equal to or in excess of said principal sum of $1,500.00 and the interest due thereon.

"WHEREFORE, the plaintiff sues the defandant and claims damages in the sum of $150,000.00."

To counts 7 to 12 inclusive the following pleas were filed:

"2. And for a further plea the defendant denies that the money, alleged to have been loaned by the said John Logan to the defendant, was borrowed of the said John Logan for the exclusive use of the free public schools of said District, and denies that the money so lent was so used.

"3. And for a further plea to each of said counts, the defendant denies that at the time of demand for payment, as set forth in said counts, or at any other time, defendant having in its possession and control applicable funds belonging to said District, equal to, or in excess of the principal of said loans,

"5. And for a further plea to counts 7 to 12, inclusive, the defendant says that it never was indebted as alleged."

Issue was joined on the second and third pleas.

To all the counts 7 to 16 inclusive, the plea was of the general issue on common counts, viz.: "never was indebted

as alleged," which plea when proper operates as "a denial of these matters of fact from which the liability of the defendant arises." The plea operates "as a denial both of the receipt of money and the existence of those facts which make such receipt by the defendant a receipt to the use of the plaintiff." Crandall's Florida Common Law Practice, Sec. 156 and note. Carson's Florida Common Law Pleading, page 110. Rule 64, Circuit Court Rules, Law Actions. Jonas v. Burks, 87 Fla. 68, 70, 99 So. 252; Poppell v. Culpepper, 56 Fla. 515, 47 So. 351. "The parties to an action are bound by the issues made in their pleadings." Conrad v. Jackson, 89 Fla. 2, 103 So. 113.

It was stipulated that the cause shall be tried by the Judge without a jury as authorized by Section 4358 (2691) C. G. L. By stipulation the cause was tried upon a statement of facts, which statement of facts includes:

"1. The school warrants mentioned and described in the declaration, Nos. 2077, 2082, 2155, 2191, 2079 and 2080, shall be filed in evidence without objection as to the manner and form of execution. The total amount of interest heretofore paid on said warrants is correctly shown on the reverse side of each of said warrants. * * *

"12. That the amounts, so loaned by the said John Logan, were credited to the Special Tax Fund of Special Tax School, District No. 1, and became merged with moneys accruing to said fund from the sources provided by law."

In the brief filed by counsel for the board it is stated that "the general issue of 'never was indebted' was the defense." "It is admitted that the money was loaned and that it was deposited to the credit of the District, that the identity of the money loaned was merged with the moneys accruing to the District from the special fund authorized to be levied under Section 10, Article XII of the Constitution."

In view of such stipulation and concession, pleas 2 and 3, if good, may be regarded as waived or eliminated; and this appears to accord with the written opinion of the trial court in rendering the judgment.

Two other lengthy pleas to "amplified" common counts averring unauthorized or improper conduct of the School Board with reference to the administration of funds within their official functions, were eliminated on demurrer; and the principles herein stated are sufficient to show such pleas constituted no defense to the action or were covered by the plea of the general issue.

The court excluded a part of the claims and rendered judgment for a part of them on the theory that the board had no authority to borrow some of the amounts in view of the anticipated and actual annual revenues of the Special Tax School District and the outstanding indebtedness of the district.

A writ of error was taken by each party, plaintiff and defendant.

Where money is borrowed in good faith by a governmental unit and the money is used for an authorized purpose, the unit may be liable on principles of equity and justice, as on an implied assumpsit, for money had and received, provided such borrowing is not expressly forbidden by applicable law. See 44 C. J. 1146 and authorities cited.

In an action against a governmental unit for money had and received, a written order or promise to pay borrowed money may be adduced in evidence to show that the amount received for use in a lawful purpose even though an action might not be maintained on the written order or promise to pay.

The county board of public instruction acts for the Special Tax School Districts in financial matters. Board of Pub.

Inst. Pinellas Co. v. Knight & Wall Co., 100 Fla. 1649, 132 So. 644; Juvenal v. Dixon, *et al.*, 99 Fla. 936, 128 So. 27.

In view of the statutory authority and duty of the board to maintain appropriate schools and facilities in every locality in the county, including the "special tax schools" in "special tax school districts," and as to the direction and control of the board over special tax schools, it seems clear that the board had authority to borrow money for the authorized school purposes; and if the board in good faith received money and used it for the authorized purposes of "special tax schools" in "special tax school districts" in the county, an action duly brought may be maintained against the board for money had and received, to recover judgment for the amounts so used with appropriate interest. The law contemplates that money lawfully and in good faith borrowed and used by proper officers for authorized school district purposes shall be paid from funds accruing to such districts, such payment to be made in authorized ways that are least detrimental to current school operations, though current expenditures be in a measure curtailed in order to make reasonable payments for money borrowed and used in previous years to enable the schools to continue operation.

Section 17, Article XII, Constitution, provides for the issue of bonds by Special Tax School Districts under stated restrictions "for the exclusive use of public free schools within any such special tax school district"; but there is no other express authority for a special tax school district to borrow money; nor is there any express prohibition against borrowing money by such a district; and implied authority to borrow is sufficient. The revenues of special tax school districts under Section 10, Article XII, are from *ad valorem* taxes and are not collected for several months after the school year begins, which, even if urgent or emergency ex-

penses are not required for proper operation of the schools, may make borrowing of money essential to the required operation of the schools. In recognition of this fiscal situation and of the necessity of operating the schools during the school year notwithstanding the stated fiscal conditions, the statutes confer upon the county board of public instruction such general authority and duties in the maintenance of both county and district schools as to afford at least clearly implied authority to borrow money in appropriate amounts when imperatively necessary to the required operation of the schools under the statutes. See Sec. 711 (570) 717 (576) C. G. L. But the law contemplates efficient and economical management by the chosen officials. Where annual expenses are allowed to exceed the annual receipts, whether from negligence, inefficiency of management or other cause, debts necessarily accumulate, unless the taxpayers protect or assert their rights in the selection of officers or by corrective legal proceedings. The law does not contemplate that, when duly chosen officials extravagantly or negligently spend public funds they are authorized to borrow and properly expend and repay, the lenders shall suffer a loss because of the delicit of chosen officials, when such lenders do not in any way participate in such needless expenditures or do not lend the money with record or other reasonably informing notice of the intended or actual improper use of it.

If by intendment or in principle Section 566 (458) C. G. L. is applicable to the funds of Special Tax School Districts so as to impose an express limitation upon the authority to borrow to 80% of the estimated amount required to maintain the necessary common schools for the next ensuing scholastic year, the provisos to the section preserve the integrity of outstanding debts, and do not *require* debts

to be paid in full by the board "before being permitted to borrow eighty per cent. on the estimate for the next ensuing year." The section certainly does not prohibit the borrowing of money before the previous debts are paid in full, see later Act, Chapter 13297, Acts 1927; therefore the implied power to incur indebtedness for proper school purposes with the approval of the county board of public instruction as recognized by Section 717 (576) C. G. L., is not specifically limited by statute, though efficient and faithful administration of the authority and duties conferred by the statute demands that money should be borrowed only when and to the extent that it is imperatively necessary to conduct the schools as required by the statutes. See Sec. 710 (569), 711 (570), 561 (454), 717 (576), C. G. L.

When bonds are not issued for that purpose as authorized by law, proper expenses for buildings, repairs, permanent equipment, furniture, insurance premiums and perhaps other items may be spread over a period of time that has proper relation to the duration of the object for which the expense was incurred by the school district.

It may be that *necessary* expenses incurred in a given year will exceed the reasonably contemplated revenues of the district, but this should be adjusted in the following budgets to avoid an increasing debt. State *ex rel.* Board Pub. Inst. Monroe Co. v. Bervaldi, *et al.,* 103 Fla. 902, 138 So. 380.

Inefficient management or extravagant expenditures may not affect the obligation to pay money received and used by proper officials for authorized purposes, though excessive expenditures may be enjoined, or individual liability enforced.

In this case there was no specific limitation upon proper expenditures for authorized and necessary district school purposes, and it appears that there was no such record

made of anticipated receipts and expenditures as the law contemplates; and those whose money was used for authorized district school purposes were not reasonably put on notice that there may be excessive or unnecessary expenditures for authorized purposes so as to make the lenders participants in such improper expenditures, which might exclude a legal right to recover for money so used.

It appears that money was borrowed and used for district school purposes before the enactment of Chapter 6828, Acts of 1915, Section 566 (458) C. G. L. If such statute is applicable to Special Tax School Districts, the provisos therein appear to negative an express limitation affecting the repayment of money received and used for Special Tax School District purposes. See also Sec. 577 C. G. L.; Chapter 13297, Acts of 1927.

In Munroe v. Reeves, 71 Fla. 612, 71 So. 922, and in State v. Greer, 88 Fla. 249, 102 So. 739, the statutes authorized the erection of school houses, but the statutory authority to issue municipal bonds for that purpose was held to be invalid. See also Brown v. Lakeland, 61 Fla. 508, 54 So. 716.

In Nuveen v. City of Quincy, 115 Fla. 510, 156 So. 153, the action was assumpsit on common counts to recover money received and used in erecting school buildings. The statute of limitations barred the action.

In Leonard v. Franklin, 84 Fla. 402, 93 So. 688, the county school board had no authority to issue proposed interest-bearing time warrants, payable from *county* school funds, the proceeds to be used in aiding the building and equipment of school buildings in Special Tax School Districts in the county. The Constitution provided for Special Tax School District bonds for such purpose. Sec. 17, Art. XII, See also Barrow v. Moffett, 95 Fla. 111, 116 So. 71;

State v. Board, 98 Fla. 1152, 125 So. 357; Bd. Pub. Inst. v. Union School Furn. Co., 100 Fla. 326, 129 So. 824, having reference to *county* school funds.

In Board v. Kennedy, 109 Fla. 153, 147 So. 250, the county board of public instruction was not authorized to contract to pay interest on a warrant for amount due for transporting pupils before judgment rendered for amount due.

In Savage v. Board, 101 Fla. 1362, 133 So. 341, Chapter 12847, Acts of 1927, was interpreted; and no question was presented as to prior limitations upon the power of the county board of public instruction to borrow money for school purposes in Special Tax School Districts.

On the record as made in this case it appears that the plaintiff is entitled to recover judgment for amounts shown to have been loaned and used for school purposes in the Special Tax School District.

Reversed for appropriate proceedings.

ELLIS, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.